The first case we'll hear today is PDX North v. Comm NJ Dept Labor, numbers 19-2968 and 19-2993. Now, I'd ask Council, I know that you moved and we granted a motion to split the time, 13 minutes to PDX and 2 minutes to SLS, but will there be a reply and how much time do you want and whose time does that come off of? Thank you, Your Honor. Good morning. This is Corinne Traynor from the firm Fox Rothschild. Pursuant to our motion, we've asked the Court for 13 minutes. I intend to ask for 3 minutes to reserve on rebuttal. And I understand Mr. Sarmazi, who has been granted argument for 2 minutes, plans to reserve 1 minute for rebuttal. Okay. Correct, Your Honor. Is that what we're doing? Okay. So that means 10 minutes to start. Let me interject. Can you hear me? Sure. Is that what we're doing, having 1 minute and 1 minute? That is correct, Your Honor. Good morning. This is Vafa Sarmazi on behalf of SLS Delivery Services. 1 minute initially and 1 minute for rebuttal, with the Court's permission. Do you think that's really worth it? The rebuttal time, Your Honor, or the 2 minutes that we have? The rebuttal time. Quite frankly, I... You might make better use of 2 minutes. Okay, Your Honor. Thank you. I'm prepared to be able to go through my points in 1 minute and save 1 minute for rebuttal. But if the Court has questions during my oral argument, then by all means, we'll just take it off the rebuttal time. Okay. Okay. All right. Well, so I guess we'll hold steady with 1 minute of rebuttal time. All right. Well, Ms. Treanor, we'll hear from you first. Thank you, Your Honor. Good morning. May it please the Court. As I mentioned, I'd like to reserve 3 minutes for rebuttal. Today, appellants asked this Court to reverse the District Court's July 29, 2019 order. Appellants only raised 2 questions on appeal, although the Commissioner appears to ask the Court to alternatively address an issue not addressed below, the substance of the Commissioner's motion for judgment on the pleading. That aside, the first question challenges the District Court's decision to abstain under Younger, and the second question challenges the conclusion that the Tax Injunction Act bars appellants' claims. Turning first to Younger, the error of the District Court's decision is emblematic of the inherent danger identified in Sprint Communications, because when District Courts abstain, they circumvent their virtually unflagging obligation to decide cases and thus delay the administration of justice. This is not the exceptional case. Excuse me, please. This is Judge Sirica. Why don't we have a civil proceeding here that is quasi-criminal in nature? Yes, Your Honor. The key point to note there is that this is a civil proceeding, but it is not a civil enforcement proceeding that is quasi-criminal in nature. It is not instituted for the purpose of sanctioning PDS for some wrongful conduct. The policies that underlie the proceeding cannot be vindicated through enforcement of a parallel criminal statute. And because it is not akin to criminal prosecution, as it might be for Younger to apply, the District Court's decision should be reversed. Does it seek penalties, though, counsel? I'm sorry, Your Honor. I couldn't hear you. Sure. Doesn't it seek penalties, this state action? The penalties that are involved, respectfully, Your Honor, are civil in nature. So, for example, and the cases here are instructive. So, for example, in State v. Drake, New Jersey, S.A. Super 458, active 1963, the court described actions brought pursuant to the same statute, NJSA 4321-14B, as neither criminal nor quasi-criminal, but civil. So just because the word penalty is used, that does not, in and of itself, denote a quasi-criminal action. Judge Sirica had pointed out that we are talking about an action of some sort that is – key to it is unlawful action, right? So I don't know that that's the case, Your Honor. So this is part of a larger regulatory scheme. Audits are instituted often randomly, thousands per year. That denotes nothing more than any other civil proceeding. There's nothing quasi-criminal about it. This is more than just an audit, Your Honor. Is this strictly under Section 14 or is it under Section 16E also? My understanding is that this was under Section 14 and that to have penalties other than interest, you'd have to bring another proceeding under 16E. Am I correct on that? You're absolutely correct, Your Honor. There's absolutely nothing in the record from the inception of the dealings between PDX and the Department of Labor to this date that would indicate any proceeding has been brought for fraud under 16E. There just isn't anything in the record at all or in existence to support that. And, for example, in Traynor v. Hernandez, which this court recognized in ACROTURF, that was found to be a quasi-criminal proceeding because the state could have vindicated the same interest. That case involved welfare fraud through criminal action. This case, similarly, is unlike the civil enforcement proceeding in Gonzales v. Waterfront Commission, which this court decided in 2014. There, the district court decision Younger Abstention Holding was affirmed because the court found that the administrative proceedings were quasi-criminal. They involved a plaintiff that made materially false statements knowingly in an affidavit. And following a formal criminal investigation, a disciplinary hearing was instituted to sanction the plaintiff, therefore, his wrongful, deceitful conduct. The PDX proceeding issue is the result of a simple field audit, which PDX contests. For these reasons, because it doesn't have these badges of fraud that we see in quasi-criminal proceedings, we submit that it is a civil proceeding and not a civil enforcement proceeding akin to that would denote it has a criminal undertone as is required under SPRINT. We also know that it was not initiated for the purpose of sanctioning PDX because, again, as I mentioned, these field audits counting in the thousands per year are not initiated for the purpose of sanctioning employers, but rather to abide by the U.S. Department of Labor's field audit program parameters. So at bottom, this case is like SPRINT and ACROTERF because there is no parallel criminal statute whose policy mirrors the policy that is advanced in PDX's proceeding, namely the opportunity for PDX to be heard and to prove that its drivers are independent contractors. Because PDX's pending matter is not a civil enforcement proceeding that is quasi-criminal, we submit that the court need not look to the middle sex factors. However, if the court reaches a second level of inquiry under younger, we submit that the factors likewise mitigate in PDX's favor and therefore warrant reversal. Specifically, as to PDX, we agree that there is an ongoing state judicial proceeding, though the legal questions and factual disputes to resolve in each matter are different. Second, we agree that the state's interests are implicated in the state proceeding, but there is also a federal interest here, a federal question presented in both appellants' pleadings that prevent states from enacting regulations with regard to interstate trucking. Can you raise these federal claims, these constitutional claims, preemption, and other constitutional claims in the state proceeding? No, Your Honor. Not in the same way, Your Honor. And that would go to the third middle sex factor. And so let me, if I could, explain. So in this regard, the administrative proceeding and thus the appellate division's review of the proceeding is necessarily limited by the time period of the audit that PDX contests, which limit the type of relief to which PDX would be entitled. PDX's constitutional claims can't be asserted as an affirmative claim for injunctive relief in the administrative proceeding because New Jersey administrative procedure simply does not permit it. Can't you take it to the appellate division to assert any of these claims, even if you can't do it in the administrative procedure? So, Your Honor, that's the second reason why we suggest that the appellate division and the state proceedings are inadequate. The appellate division does not resolve factual disputes, as Judge Schiff noted in his May 2016 opinion, and as this Court alluded to in Lupien, in cases like this, with constitutional claims like this, motions for summary judgment, along with the attendant factual evidence and, to the extent necessary, a fact-finding hearing, are necessary to resolve the particular type of preemption claims presented. But what about our Gonzales' opinion? Didn't our Gonzales' opinion basically say it was adequate, the ability to go to the appellate division? Was it adequate to raise constitutional-type claims? So, in Gonzales v. Waterfront Commission, Your Honor, the district court decided that issue while Sprint was pending, and that was a pure issue of law that didn't require the factual record that the claims of appellants require in order to meet their burdens of proof. So, for example, and here, because of the way that these proceedings are structured under the administrative procedure, PDX can only raise a constitutional issue to rebut the presumption of employment. It can't ask for prospective injunctive relief. We submit, Your Honor, that this is more akin to Garrett v. Bamford, which this Court decided in 1976, albeit a Tax Injunction Act case. The Court there recognized the discriminatory pattern that was systematic and repeated, and required plaintiffs to undergo an administrative repeal route time and again, expending additional time, effort, and money. We submit that to the extent it's required, that we're required to go to the administrative courts, and that we can't be heard here, assuming that the Court does get to the middle sex factor, PDX will be required time and again to prove its constitutional claims in defense of itself, rather than affirmatively to secure injunctive relief. Well, I think you'd better get to the Tax Injunction Act argument, because you don't have a whole lot of time left. Thank you, Your Honor. I'd be particularly interested in how you get around the Supreme Court's decision in Grace Brethren Church and our decision in the Syke case.  In the Tax Injunction Act, I will pull up the Grace Brethren Church matter. I'll just start with saying that the appellants do not challenge the assessment, levy, or collection of a tax. The challenge here is to the definition section of a statute, and specifically the way that employment is addressed. Isn't that kind of really parsing the argument, though? I mean, aren't you really seeking to enjoin the Commissioner from auditing and assessing you? You know, you're doing it through a statute, but is that really accurate to say you're not challenging a levy or an assessment? Yes, Your Honor. So, respectfully, there's an entirely different section of this statute. It's subsection 7 that requires employers to submit contributions to the state. We do not challenge that employers are subjected to this regulatory scheme, that employers must submit unemployment compensation tax and everything else that employers under the law are required to do in the state of New Jersey. Under Hargrove v. Sleepy's, this particular statute applies to all different wage and hour and, frankly, practical consequences as far as how motor carriers run their business. And so, therefore, we submit that the state regulation or the state statute is a backdoor regulation. In other words, that when motor carriers decide how to structure their business in order to determine their profit margins and how they're going to run operations and how they're going to then provide the services to their clients and transport property around the country, these are the kinds of statutes and the patchwork of regulation that the Motor Carrier Act and the F4A are specifically designed to avoid. And so the Tax Injunction Act here is no bar for two reasons. One, again, we do not challenge whether or not the state itself can actually collect, assess, or levy against PDX or SLS at all. The manner in which the state would do it would have to change. I'm afraid your time is up. So, Judge Sirica or Judge Roth, do you have anything else you'd like to ask? Yeah, I do have a question I'd like to ask. I'm really bothered by the delay in time before Younger was even mentioned. This case was in litigation and discovery for three years. And other than the assignment of a new judge, what else happened to bring on the decision, as far as you're aware, to raise the Younger doctrine? I understand your question, Your Honor, and I'm just as perplexed as you are. I don't know why in 2015-16, at the beginning of this case, before we produced thousands of pages of discovery and two expert reports at great cost, and when the state and the Commissioner then filed a motion to dismiss, citing and relying on Younger cases, knowing that the doctrine existed, with Judge Shipp then declining or denying their request to dismiss under Colorado River, requiring the same consideration here, specifically the adequacy of the state proceeding. Why it was then four years later that they filed the motion again, I don't know, Your Honor. And specifically, the Grijales case and the Ideal Steel cases referenced in my briefing indicate that this 12-seat motion was filed far too late. Thank you. All right. Thank you. Judge Sreka, do you have anything more? No, I don't. Okay. Thank you. Let's hear from Mr. Sambasi. Good morning, Your Honor. Good morning, Your Honor. May it please the Court, my name is Vafis Sambasi. Today I will be arguing on behalf of SLS Delivery Services. I would like to reserve one minute of SLS's time, as indicated earlier, for rebuttal to the extent it's permitted with the time taken. SLS would like to highlight the following important points relating to its appeal. First, SLS did not have any matter pending before the Office of Administrative Law. Second, the Court not only discounted that fact, but went further and assumed facts that were not part of the record. Specifically, and as reflected in the Court's opinion, at Appendix page 823, the Court mistakenly believed the Commissioner's audit of SLS had been completed by the time the Court rendered its decision. Based on that incorrect fact, the Court made the assumption that an assessment and subsequent administrative challenge were imminent. Finally, the State's initiation of an audit cannot be considered a quasi-criminal proceeding. Indeed, if every New Jersey Department of Labor audit was to be considered a quasi-criminal proceeding against every employer, due process would dictate that at least a summary hearing be conducted before quasi-criminal sanctions are imposed or certificates of lien won't file relating to assessments. Thank you. What is the status of the audit right now? Your Honor, the audit was opened and then SLS moved to intervene two months later. The audit basically paused pending the SLS's case along with PDX's. Nothing moved forward following the initiation of the audit. So we're in the same situation? Correct, essentially. But none of that was before the Court below. And the Court mistakenly believed that the audit had been completed. I understand. Thank you. Thank you, Your Honor. Thank you, Counsel. All right, we'll hear from Pelley's counsel. Good morning, Your Honor. If it may please the Court, Deputy Attorney General Emily Marie Bissnoff. I have the great pleasure of representing Pelley Robert Asaro-Angelo, the Commissioner of the New Jersey Department of Labor and Workforce Development. The District Court's decision, grounded in principles of comedy, equity, and federalism, should be affirmed for three reasons. First, the Tax Injunction Act forecloses appellants' claims because they implicitly seek to restrain the assessment, levy, or collection of any state tax under state law here in New Jersey's unemployment compensation laws where there already exists a claim to be an efficient remedy. Here, appellants are challenging unemployment compensation tax laws. As the Supreme Court recognized in California Grace Brethren Church and this Court expressly concluded in Sykes v. R.M.A. Hess Court, it cannot seriously be disputed that unemployment compensation contributions and laws are taxes within the meaning of the Tax Injunction Act. We are instructed by precedent to look at the relief sought to determine if the Tax Injunction Act is implicated. And we know from this Court's decision in Hamilton v. Bromley, if there is no jurisdiction, we don't even get to abstention. Here, we are guided by appellants' very pleadings, which demonstrate that they are attacking the state's unemployment tax law system and scheme. They are seeking both declaratory and injunctive relief by raising constitutional objections to the tax system by way of attacking the very statutes which determine whether or not unemployment contributions are required. This is inherently challenging the state's taxing authority. Specifically, they seek to eviscerate the state's ability to tax them by attacking the ABC test and the truck driver's exemption. Excuse me, let me ask you a question. You never worried about the Tax Injunction Act until the District Court brought it up four years after you had been litigating this case, correct? Well, it is correct that the District Court was the first to raise this issue. The Tax Injunction Act, that should be of no moment in sight. The parties below didn't actually raise the issue until after the appellate briefs were filed. The District Court is required to raise issues of subject matter jurisdiction when it becomes aware of them. They can be raised at any point in time. Excuse me, is the Tax Injunction Act jurisdictional? Yes, the Tax Injunction Act restrains, a District Court cannot restrain the assessment, levy or collection of any tax under state law. And further, I think generally to Judge Ross's question. But does the court have jurisdiction to hear it or is this simply a matter of discretion whether the state wants to challenge it or not? No, the court does not, I submit, does not have jurisdiction to hear it. I think principles of comity more generally help explain this concept. A case that's almost analogous to what's happening here occurred in the Supreme Court case Levin v. Commerce Energy, that's 560 U.S. 413. And there the court explained that there's a paramount interest in the state's ability to assess, levy and collect taxes and that federal courts should refrain from deciding such matters under principles of comity, especially in instances where they're reviewing taxation. But comity is not jurisdiction, right? That is correct, Your Honor, but the Tax Injunction Act codifies principles of comity and the Tax Injunction Act is jurisdictional and it does foreclose the challenge claims here. Was jurisdiction challenged in Bedoya? Jurisdiction was not challenged in Bedoya, Your Honor, but I would note the posture of that case, while it was dealing with the ABC test, was in the context of wage and hour laws, not in the context of unemployment tax contributions. So therefore, it wouldn't have been implicated based on the posture of that case. They were dealing with wage and hour claims, not unemployment compensation taxes. This is a direct attack on the state's UCL tax scheme, which is impermissible under the Tax Injunction Act and appellants instead should turn, pardon me? I'm sorry, are we dealing with a tax benefit or a tax credit? We're dealing with the ability to even determine that they are liable for unemployment contribution taxes because the ABC test is a mechanism that would implicate tax liability. And that's not disputed, that if you're an employer, counsel conceded, if you're an employer, under the ABC test, you are required to make unemployment contribution taxes. And there is a... Let me just ask you a general question, which I'm a little unclear on. Is it your position that PDX and SLS seek to enjoin the levy, assessment, or collection of tax, or all three? Yes, I would say all three because they're attacking the tax scheme. There has been, there's a process. Cases don't just get into the Office of Administrative Law. The OAL is not a body of independent jurisdiction. The audit is the initiating step that implicates tax liability. From there, there can be assessments, which is the actual amounts that are due. And it's over a million dollars we're talking about for the state's unemployment compensation fund. The levy is the judgment. At the PDX, there already are judgments entered. So collectively, the entire relief thought, both declaratory and injunctive relief in their entirety, are attacking the assessment, levy, and collection of New Jersey's unemployment compensation taxes. We know from sites that they can turn to the New Jersey courts. Sites, it indicates that New Jersey courts have the jurisdiction to interpret federal statutes and decide federal claims. And there's a New Jersey Supreme Court case, Pepper v. Princeton, for that principle. There is a plaintiff... Can I ask, I'd like you to move on a little bit. Sure. I'm wondering about this, are you familiar with the Supreme Court's decision in Hibbs? Yes, I am familiar with the Supreme Court's decision in Hibbs, Your Honor. I'm wondering how you distinguish that from this case. Isn't this a federal action challenging a tax benefit afforded to other motor carriers, as was the case in Hibbs? That is correct, Your Honor, but Hibbs is distinguished because in Hibbs, you had third parties. They did not have their own tax liability at issue. The relief they sought could not in any way deplete the state's treasury. It was very important, the court noted, that in that suit for declaratory and injunctive relief, it was not implicating in any way their own tax liability.  The pleadings were initiated because the Department of Labor and Workforce Administration took formal action against appellants in relation to their own tax liability. That is a significant distinguishing factor between Hibbs and this matter. You finish your answer and then I have a question. Sure, Your Honor. I would just say here, they are challenging the regulatory latitude of commercial matters of the state. They themselves are challengers to an allegedly unconstitutional tax scheme. They are in fact seeking federal court aid in an endeavor to improve their competitive position. They note in their pleadings that they don't want other entities to turn to hiring delivery drivers directly. That's completely different from the posture of Hibbs because of their own tax liability. Your question, Your Honor? Yes, it goes to the constitutional issues and whether they can be raised. In New Jersey state court. Yes, Your Honor. Their constitutional issues can be raised in the state court proceedings. This has been long recognized from the Supreme Court precedent in Sprint, from this court's precedents in Dahl and Gonzales. For the purposes of reviewing whether or not the constitutional issues can be raised in a state court proceeding, we look to both the administrative proceedings and the subsequent review of the reviewing court. In this instance, that would be the New Jersey Appellate Division. It's reviewed as a single process. It's undisputed that as a right, final agency decisions can be appealed to the New Jersey Appellate Division. The New Jersey Appellate Division has the ability to review any constitutional challenges that the parties seek to make. Furthermore... Excuse me, excuse me. PDX is arguing that the Appellate Division could not decide the issues here because there are factual determinations that must be made, and the Appellate Division cannot do that. Is that correct? While the Appellate Division cannot make a factual decision in the first instance, the New Jersey system is already set up for this very issue. The administrative courts are permitted to make fact-finding and to decide constitutional issues in the first instance if it's necessary to determine, excuse me, to develop a fact-finding decision. That gets reviewed by the agency head, in this case it would be the Commissioner of the Department of Labor and Workforce Development. They are allowed to provide their expertise, and in this case the Commissioner absolutely has expertise on unemployment compensation laws. That then gets reviewed by the New Jersey Appellate Division. In Gonzales, the ALJ passed on deciding constitutional issues, but that was of no moment because the Appellate Division could still review the constitutional issues raised. But the Administrative Court can absolutely decide issues of fact and when constitutional issues are necessary in making that fact-finding, they're permitted to do so, and that will get reviewed by the New Jersey Appellate Division. Here there is a plain speeding efficient remedy, and it should be noted that the Supreme Court's precedent makes it clear that speeding does not necessarily mean the most convenient. They referenced a case where it took two years to get a decision, and that did not want to foul of being a plain speeding efficient remedy. Let me ask you, talking about a speeding and efficient remedy, how did it happen that the state of New Jersey permitted this case to proceed in the federal court for three years, discovery complete, before it raised the issue of younger abstention? That frankly bothers me a great deal. But what is the reason, particularly when other abstention doctrines had been argued and decided that the state of New Jersey did not raise younger abstention for three years after their original speeding was filed? I think, Judge Ross, the posture of the case in the entirety needs to be reviewed. While the case, while there were three years, the case was stayed for a great period of time when an intervention motion was being decided. I'm talking about the federal case. Was that stayed? Pardon me? The federal case was stayed? Yes, yes, Your Honor, yes. The federal case was stayed when the intervention motion was being decided. It was also... That was not a significant amount of time. I mean,  No, discovery is far from complete in this case, Your Honor. While counsel alluded to discovery in the case, colossal swaths of the discovery were redacted. I personally reviewed it and we were in the process of dealing with discovery issues outside of this proceeding because there was no privilege law. A trial date was never contemplated. PDX did not oppose the intervention of the new party. When SLS came into this case, the whole discovery schedule got reset back years, essentially. We weren't even done and we weren't due to be filed. There's never been a trial date in this case and the standards for the Rule 12c is not long enough to delay trial. There's never been a trial date here. There's no blanket prohibition on raising the abstention, the younger abstention under these circumstances. Furthermore, case law makes it clear that motion for judgment on the pleading is the appropriate vehicle to address abstention issues. So the scheduling order for all parties actually contemplated the state filing another despondentive motion. So I think the totality of that... There are instances where the claim that younger abstention should apply has been denied because of the extent of proceedings already undertaken in the trial court, correct? That is correct, Your Honor, but I think that's in the context of seeing how close you are to trial and if you would be delaying trial. Here, it's just not feasible. It's just not possible that we were delaying trial. We filed the motion within days of SLS filing its complaint that after the pleadings were closed, the fact that there was new pleadings reset the clock essentially and we were permitted to respond to SLS and just logically and just from a fair standpoint, it would not make sense to make arguments to SLS that didn't apply to PDX when our position is there in the same posture. Isn't SLS piggybacking on PDX except for the issue of whether there is already an existing proceeding? They may be, but they came into the case as a new party and there were new prayers of relief also in PDX's amended complaint that were not present in their prior complaint including in joining future audits which goes to the heart of the Tax Induction Act and they simply cannot have decided here the appropriate forum is the state court proceeding. Here we have an overriding and vital interest in the state of New Jersey protecting its workers. I cannot overstate that in the time that we're living in. The state has a vital interest in protecting workers from misclassification and ensuring the fiscal integrity of its funds. But if that violates the U.S. Constitution and I'm not saying that issue has been decided, it's the issue that PDX wants decided, but you can't pull yourself up by your own bootstraps and say well, we have to safeguard workmen's compensation when it hasn't been decided yet whether you're entitled to it. Your Honor, respectfully, we're not dealing with workers' compensation. It would be unemployment compensation and I do think that DOIA has decided that. I'm sorry. I'm sorry. Oh, no worries. I just wanted to make sure I was hearing the question right. The S.Y.A. does not preempt New Jersey's unemployment compensation laws, but DOIA demonstrates that its connection I'm talking about the liability of PDX. The liability of I'm not sure I understand your question, Your Honor. Well, PDX is saying that there are issues of facts constitutionally whether it should whether Exemption X is valid under the U.S. Constitution and until that is decided, the State of New Jersey has no claim for unemployment compensation against PDX until that constitutional issue of the priority of federal law preemption of federal law has been decided, correct? I think that's exactly what the Tax Conjunction Act is to prohibit. It's to prohibit the state from having to have cases federally adjudicated that impact directly the state taxatory scheme. That proves the point that this is not the type of proceeding that should be in the federal court. They must go to the OAL to have those issues decided. If anything, there's a mechanism already in place and the interest of equity, comity, all demonstrate that the proper forum here is to have the state process respected and let it play out. It's a unitary process from beginning to end. It's governed by the Administrative Procedure Act. There's the rules of court once you get to the appellate division. There's a mechanism for them to challenge to raise their constitutional issues and it's not in the federal court. Can I ask a question on this? Sure. Why with respect to younger abstention, why do we have an ongoing proceeding here? Isn't this really premature to say that it should apply to SMS? I believe that we do have an ongoing proceeding, Your Honor, because by virtue of the audit, there is an ongoing proceeding. Morales versus PWA from the Supreme Court said that we cover about 50% of the administrative   it's not an ongoing proceeding. It's a unitary process. We have DAWs that are looking at the administrative process. We know that proceedings that are judicial in nature qualify and there has been official action by virtue of the initiation of the audit. It's not even about to be pending. It's been initiated and the administrative process has to be reviewed holistically because again, the Office of Administrative Law in New Jersey is not a body of independent jurisdiction. There must be agency action for a case to get to the OAL. That agency action has already taken place with regard to SLS because  initiated. Who makes that decision or initiates the audit? The Department of Labor and Workforce Development, not the parties. The state is the one that initiates the audit, Your Honor. Okay. Let me ask you. I think I understand. Let me ask with respect to PDX. Your opponent has challenged whether or not this is a quasi-criminal proceeding and says that there's no wrongful conduct and that there's no criminal analog with respect to fines and jail and so forth. Please tell me your view on this. I think that that is incorrect, Your Honor. The Unemployment Compensation law itself within its penalty statute, Title 43, 21-16, makes it an express crime to violate the UCL. There's also a litany of charges that the state could vindicate its interest under the Title 2C, which is the New Jersey Criminal Code and the New Jersey statute annotated, such as theft by deception, wrongful acts of corporate officers, just to name a few. Just because the state has not vindicated those interests through a criminal proceeding yet does not mean that they could not do a parallel criminal proceeding. And in their very complaints, both PDX and SLS share criminal prosecution, so therefore it is quasi criminal. Absolutely, the state is seeking to sanction them for wrongful doing. In Zoll, we make reference to not only just legal wrongdoing, but whether or not there's any allegation of even more wrongdoing. Here, absolutely, the state is saying that it is improper to misclassify workers, workers that deserve to have access to unemployment compensation benefits, that these employers are not paying their fair share by misclassifying workers. And the department and the commissioner and the state absolutely seek to sanction and vindicate that paramount police power interest in protecting our workers. All right, counsel, unless the court has any other questions, your time is up. Thank you, your honor. Thank you. Okay, Ms. Treanor, we'll hear from you for two minutes. Thank you, your honor. I just want to respond to a couple discrete points raised by Ms. Bisnell. Number one, with respect to the Tax Adjunction Act, the word speedy has really never been construed, but the word plain has. And if there's any ambiguity with respect to whether the state administrative proceeding will afford constitutional remedies or the constitutional remedies that the parties here seek, then that is not a plain proceeding under, therefore, an exception to the tax adjunction bar. Second, just to clarify, the federal case was never stayed. Respectfully, Ms. Bisnell is on the second team here, Attorney General, to handle this matter. Her predecessor made representations that he wasn't sure if he wanted to conduct any fax depositions. We made the affirmative representation that we don't intend to take any fax depositions. And, truth be told, they've never indicated that they wanted to until we filed a motion for summary judgment in which they indicated that they thought there were material disputes that needed to be resolved before the substance of the claims could be considered. In addition to that, with regard to whether the proceedings are quasi criminal, the DIG speaks in hypothetical. Just because in some imaginary world, they could perhaps bring a quasi criminal action under 16E or some criminal statute against any particular employer in the state of New Jersey does not mean that the actual administrative proceeding at issue here is quasi criminal. Underpinning both of these main questions on appeal is the maximum that justice is delayed is justice denied. For those reasons, we submit that the laws, the equities, and the procedural posture of this case warrant reversal of the district court's order. Thank you, counsel. Finally, we will hear from Mr. Schultz to reiterate the fact that the audit initiated by the state cannot be considered a judicial proceeding of any nature given the circumstances of how that audit is initiated, what powers are given to them, and therefore, the audit of SLS cannot be considered a proceeding. Thank you. Thank you, counsel. Well, we thank counsel for their excellent arguments and briefing in this interesting case. We will take the case under advisement and wish counsel and their families good health in the future. And we will ask the clerk to... Yes? Judge, can we get a copy of the argument? Can we have a transcript? That would be great. Sure. Could the parties please order a transcript of this proceeding and split it equally? Yes, Your Honor. Thank you. Thank you,